Opinion for the court filed by Circuit Judge LINN.
Dissenting opinion filed by Circuit Judge NEWMAN.
LINN, Circuit Judge.
This appeal concerns the personal jurisdiction of a U.S. district court over a Taiwanese company in a suit for declaratory judgment of non-infringement and invalidity of two U.S. patents owned by that Taiwanese company. Because the plaintiffs failed to allege that the Taiwanese company purposefully directed any activities beyond merely sending notice letters at residents of the forum and that the declaratory judgment action arose out of or related to those activities, we affirm the district court’s dismissal of all claims for lack of personal jurisdiction.
I. BACKGROUND
Avocent Huntsville Corp. (“Avocent Huntsville”) and Avocent Redmond Corp. *1327 (“Avocent Redmond”) (collectively “Avo-cent”) are subsidiaries of Avocent Corporation, a Delaware corporation located in Huntsville, Alabama. Avocent develops and markets computer hardware devices. Aten International Co., Ltd. (“Aten International”) is a corporation formed under the laws of Taiwan, with its principal place of business in Taipei, Taiwan. One of Aten International’s U.S. subsidiaries, Aten Technology, Inc. (“Aten Technology”), is located in Irvine, California. IO-GEAR, which is located at the same address as Aten Technology, is also affiliated with Aten International.
Avocent and Aten International compete in the manufacture and sale of keyboard-video-mouse switches (“KVM switches”), which allow a computer user or users to share a single keyboard, video device, and mouse, or multiple sets of keyboards, video devices, and mice. It is undisputed that various Aten International products are available for sale within Alabama. Avo-cent has alleged that Aten International purposefully directed these products to Alabama both by injecting them into the stream of commerce and through direct sales activities. Specifically, Avocent has alleged the sale and delivery to Alabama of a product purchased through the “Clearance Center” webpage of the ATEN-USA. com website published by Aten International, the existence of products manufactured by Aten International and offered for sale at Best Buy and CompUSA retail stores in Alabama, the availability of Aten International products through nationwide and Internet retailers, and the availability of these products through a government contractor located in Alabama.
Aten International is the assignee of U.S. Patent Nos. 6,957,287 (“the '287 patent”) and 7,035,112 (“the '112 patent”), both of which relate to KVM switches. This appeal relates to Aten International’s attempts to enforce these patents against Avocent.
Aten International’s enforcement efforts are reflected in three letters. The first is a letter dated May 28, 2004, from counsel for Aten Technology to John Cooper, the CEO and President of Avocent Corporation, stating:
Pursuant to Section 154(d) of the U.S. Patent Act, please be advised that the U.S. Patent Office has published a patent application owned by our client Aten Technology, Inc. A copy of the published patent application is attached. We suggest that you review the claims as we believe they are relevant to a product your company is making, using, selling, offering to sell and/or importing.
J.A. at 473.[1] A copy of the published patent application leading to the '112 patent was attached to this letter. The second is a letter dated April 27, 2006, from IOGEAR to Amazon in Seattle, Washington, encouraging Amazon to discontinue selling various products allegedly infringing the '112 patent, including the “Avocent SVM200.” Id. at 470-71. This letter collectively referred to Aten International, Aten Technology, and IOGEAR as “ATEN/IOGEAR” and asserted that this entity owned the '112 patent. The third letter was sent on March 15, 2007, at a time when Aten International and Avocent Redmond were litigating infringement of KVM patents owned by Avocent Redmond in a separate suit in the Western District of Washington. The letter was sent by counsel for Aten International to counsel for Avocent Redmond in Arlington, Virginia, asserting that Aten International’s '112 and '287 patents were infringed by Avocent’s KVM switch products and stating that efforts to resolve all outstanding *1328 disputes between the parties and avoid further litigation would require consideration of those patents as well as the others in suit. Id. at 448.
In reaction to these letters, on April 6, 2007, Avocent filed a complaint against Aten International in the United States District Court for the Northern District of Alabama for declaratory judgment of non-infringement and invalidity of the '287 and '112 patents. The complaint also presented claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125, and intentional interference with business or contractual relations under Alabama law. Aten International subsequently moved, inter alia, to dismiss the entire action for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to transfer the case under 28 U.S.C. § 1404(a) to the Western District of Washington where Avocent Redmond had sued Aten International for patent infringement related to three KVM patents owned by Avocent Redmond.
The district court granted Aten International’s motion to dismiss the entire action without prejudice for lack of personal jurisdiction. Avocent Huntsville Corp. v. Aten Int’l Co., No. 07-CV-625, slip op. at 13 (N.DAla. Aug. 30, 2007). The district court held that it could not exercise specific jurisdiction over Aten International based on the letters asserting infringement, id. at 8, concluding that under Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-62 (Fed.Cir.1998), Aten International “did not purposefully submit itself to jurisdiction in Alabama by sending the three letters listed above.” Avocent, slip op. at 10. The district court also rejected Avocent’s assertion of general jurisdiction based on the availability of Aten International’s products for sale in Alabama under a “stream of commerce” theory. Id. at 10-13. After noting that “it is not clear whether these KVM switches are the ones with patents involved in the Washington action, the instant action, or neither,” id. at 11-12, the district court found the most instructive case to be Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed.Cir.1996) (applying the stream of commerce holding of Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed.Cir.1994), in the context of a declaratory judgment action and holding that jurisdiction was proper where there were purposefully directed activities in the forum through an established regular distribution channel). The district court held that, as distinguished from Viam, “[n]o similar systematic and continuous contact by [Aten International] with Alabama has been shown by the plaintiffs.” Avocent, slip op. at 13. Avocent timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
II. DISCUSSION
A. Standard of Review
Personal jurisdiction is a matter of law that we review de novo. Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1457 (Fed.Cir.1997) (citing Viam, 84 F.3d at 427). Moreover, we apply Federal Circuit law because the jurisdictional issue is “intimately involved with the substance of the patent laws.” Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed.Cir.1995); see also Beverly Hills Fan, 21 F.3d at 1565 (“Under [jurisdictional] circumstances such as these, we have held we owe no special deference to regional circuit law.”). Furthermore, we apply our own law to all of the claims where “the question of infringement is a critical factor in determining liability under the non-patent claims.” Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1362 (Fed.Cir.2006).
In this case, “[b]ecause the parties have not conducted discovery, [Avocent] needed *1329 only to make a prima facie showing that [Aten International was] subject to personal jurisdiction. As such, the pleadings and affidavits are to be construed in the light most favorable to [Avocent].” Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed.Cir.2003) (internal citations and quotation marks omitted); see also Elecs, for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed.Cir.2003) (“[W]here the district court’s disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiffs complaint as true and resolve any factual conflicts in the affidavits in the plaintiffs favor.” (internal citations omitted)).
B. Analysis
“Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state’s long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process.” Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed.Cir.2001). Alabama’s long-arm statute permits service of process “as broad as the permissible limits of due process.” Ala. Power Co. v. VSL Corp., 448 So.2d 327, 328 (Ala.1984). Thus, our jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process.
1.
“[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.” Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). While the application of this description of due process has evolved along with the increasing national and international scope of business transactions affecting citizens of this country, the Supreme Court has repeatedly cautioned that “it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). “This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations and quotation marks omitted). Accordingly, “[e]ach defendant’s contacts with the forum State must be assessed individually,” Colder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and “[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State,” Hanson, 357 U.S. at 253, 78 S.Ct. 1228.
While it may be argued that “a nonresident corporation should expect ... amenability to suit in any forum that is significantly affected by the corporation’s commercial activities,” Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 423, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (Brennan, J., dissenting), the Supreme Court has disagreed: “Although it *1330 has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of forseeability is not a ‘sufficient benchmark’ for exercising personal jurisdiction.” Burger King, 471 U.S. at 474, 105 S.Ct. 2174 (footnote omitted). Similarly, “[t]he mere fact that [defendants] can ‘foresee’ that the article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of jurisdiction.” Colder, 465 U.S. at 789, 104 S.Ct. 1482. “Instead, ‘the forseeability that is critical to due process analysis ... is that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.’ ” Burger King, 471 U.S. at 474, 105 S.Ct. 2174 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
Consistent with these principles, the Supreme Court has drawn a distinction between “specific” jurisdiction and “general” jurisdiction. To establish specific jurisdiction, a plaintiff must demonstrate that “the defendant has ‘purposefully directed’ his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that ‘arise out of or relate to’ those activities, Helicopteros [466 U.S. at 414, 104 S.Ct. 1868].” Burger King, 471 U.S. at 472-73, 105 S.Ct. 2174. “Although the nexus necessary to satisfy the ‘arise out of or related to’ requirement of the due process inquiry has not been clearly delineated by the Supreme Court, we have stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure ‘arise out of standard.” Inamed, 249 F.3d at 1362 (citing Akro, 45 F.3d at 1547); see also Helicopteros, 466 U.S. at 415 n. 10, 104 S.Ct. 1868 (declining to address whether there should be a “distinction between controversies that ‘relate to’ a defendant’s contacts with a forum and those that ‘arise out of such contacts”); id. at 425, 104 S.Ct. 1868 (Brennan, J., dissenting).
To establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden. Specifically, where a plaintiffs claims do not arise out of or relate to the defendant’s contacts with the forum State, “[w]e ... must explore the nature of [the defendant’s] contacts with the [forum State] to determine whether they constitute ... continuous and systematic general business contacts.” Helicopteros, 466 U.S. at 415-16, 104 S.Ct. 1868 (emphasis added).
In addition to the foregoing general principles of “specific” and “general” jurisdiction, the Supreme Court has also commented on the amenability to suit of persons engaged in activities that result in the flow of goods in commerce. The Court has explained that
if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.
World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. 559. Significant confusion *1331 relates to this “stream of commerce” explication, as demonstrated by the Supreme Court’s subsequent split in Asahi Metal Industry Co. v. Superior Court regarding whether or not “[t]he placement of a product into the stream of commerce, without more,” may serve as “an act of the defendant purposefully directed toward the forum State.” 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (emphasis added) (O’Connor, J.). See generally Commissariat A L’Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1321-22 & n. 7 (Fed.Cir.2005) (discussing the conflicting plurality opinions in Asahi, noting that we have yet to decide between Justice Brennan’s lenient approach and the more rigorous standard adopted by Justice O’Connor, and recognizing a split of authority in the regional circuits on this point). Moreover, because this theory of jurisdiction originates in the product liability context, which lends itself to the specific jurisdiction framework, it remains unclear whether contacts based solely on the “stream of commerce” may suffice to establish general jurisdiction. The Fifth Circuit, for example, has held that such contacts will not support a finding of general jurisdiction. Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375 (5th Cir.1987).
The Supreme Court has also instructed that personal jurisdiction may be “proper because of [a defendant’s] intentional conduct in [another State] calculated to cause injury to [the plaintiff] in [the forum State].” Calder, 465 U.S. at 791, 104 S.Ct. 1482. In Calder, the Supreme Court held that the author and editor of an allegedly libelous article circulated in California, albeit written and edited in Florida, which “they knew would have a potentially devastating impact upon [the plaintiff],” and which targeted a resident of California, was not “mere untargeted negligence.” Id. at 788-90, 104 S.Ct. 1482. “Rather, their intentional, and allegedly tortious, actions were expressly aimed at California,” and thus they “must ‘reasonably anticipate being haled into court there.’ ” Id. at 789-90, 104 S.Ct. 1482 (quoting World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559).
Finally, “[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with ‘fair play and substantial justice.’ ” Burger King, 471 U.S. at 476, 105 S.Ct. 2174 (quoting Int’l Shoe, 326 U.S. at 320, 66 S.Ct. 154). Relevant factors include: “[1] ‘the burden on the defendant,’ [2] ‘the forum State’s interest in adjudicating the dispute,’ [3] ‘the plaintiffs interest in obtaining convenient and effective relief,’ [4] ‘the interstate judicial system’s interest in obtaining the most efficient resolution of controversies,’ and [5] the ‘shared interest of the several States in furthering fundamental substantive social policies.’” Id. at 477, 105 S.Ct. 2174 (quoting World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. 559). While “[t]hese considerations [may] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required ... where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.” Id. (internal citations omitted).
2.
Against this backdrop of Supreme Court authority, we have held in the context of patent infringement litigation that an assertion of general jurisdiction “requires that the defendant have ‘continuous and systematic’ contacts with the forum state,” and that such activity will “confer[ ] [general] personal jurisdic *1332 tion even when the cause of action has no relationship with those contacts.” Silent Drive, 326 F.3d at 1200. With respect to specific jurisdiction,
[t]his court employs a three-prong test, in which we determine whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in Burger King.
Breckenridge, 444 F.3d at 1363 (internal citation and quotation marks omitted). “The first two factors correspond with the ‘minimum contacts’ prong of the International Shoe analysis, and the third factor corresponds with the ‘fair play and substantial justice’ prong of the analysis.” Inamed, 249 F.3d at 1360. We have also applied the stream of commerce theory, although we have not resolved the split in authority reflected in the competing plurality opinions in Asahi. See Beverly Hills Fan, 21 F.3d at 1566.
a.
In the ordinary patent infringement suit, the claim asserted by the paten-tee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. See 35 U.S.C. § 271(a). Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. See Red Wing Shoe, 148 F.3d at 1360. In such litigation, the claim both “arises out of’ and “relates to” the defendant’s alleged manufacturing, using, or selling of the claimed invention. But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforce-ability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the “wrongful restraint [by the paten-tee] on the free exploitation of non-infringing goods ... [such as] the threat of an infringement suit.” Id. Thus, the nature of the claim in a declaratory judgment action is “to clear the air of infringement charges.” Id. Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee “purposefully directed [such enforcement activities] at residents of the forum,” and the extent to which the declaratory judgment claim “arises out of or relates to those activities.”[2] Breckenridge, 444 F.3d *1333 at 1363. This inquiry necessarily places greater focus in a declaratory judgment action on the differences, if any, in the meaning of the “arises out of’ and “relates to” inquiries for personal jurisdiction.
In many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an “infringement letter,” and the patentee may have little contact with the forum beyond this letter. See generally Red Wing Shoe, 148 F.3d at 1359-61. While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because “the letters are ‘purposefully directed’ at the forum and the declaratory judgment action ‘arises out of the letters,” Silent Drive, 326 F.3d at 1202, we have held that, based on “policy considerations unique to the patent context,” id. at 1206, “letters threatening suit for patent infringement sent to the alleged infringer by themselves ‘do not suffice to create personal jurisdiction,’” id. at 1202 (quoting Red Wing Shoe, 148 F.3d at 1359-60) (emphasis added). This is “because to exercise jurisdiction in such a situation would not ‘comport with fair play and substantial justice.’” Id. (quoting Red Wing Shoe, 148 F.3d at 1359-60). “Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.” Red Wing Shoe, 148 F.3d at 1360-61; see also Silent Drive, 326 F.3d at 1206. Thus, “[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be ‘other activities’ directed at the forum and related to the cause of action besides the letters threatening an infringement suit.” Silent Drive, 326 F.3d at 1202 (emphasis added); see also Calder, 465 U.S. at 788,104 S.Ct. 1482 (noting that “[i]n judging minimum contacts, a court properly focuses on ‘the relationship among the defendant, the forum, and the litigation.’ ” (emphases added) *1334 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977))).
b.
Because declaratory judgment actions raise non-infringement, invalidity, and/or unenforceability issues central to enforcement of the patents in question, we have looked beyond the “arises out of’ inquiry and have found jurisdiction where such “other activities” in some identifiable way “relate to” enforcement of those patents in the forum. Recently, in Breckenridge, we summarized our precedent regarding what “other activities” in addition to cease and desist letters would suffice to meet the “relate to” requirement for specific personal jurisdiction. 444 F.3d at 1363-67. We observed that:
[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee’s sales or marketing activities.
444 F.3d at 1366. While “the plaintiff need not be the forum resident toward whom any, much less all, of the defendant’s relevant activities were purposefully directed,” Akro, 45 F.3d at 1547 (citing Keeton, 465 U.S. 770, 104 S.Ct. 1473 and Calder, 465 U.S. 783, 104 S.Ct. 1482), we have consistently required the defendant to have engaged in “other activities” that relate to the enforcement or the defense of the validity of the relevant patents. Examples of these “other activities” include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum. See Campbell Pet Co. v. Miale, 542 F.3d 879, 886 (Fed.Cir.2008) (finding jurisdiction over a patentee whose “extra-judicial patent enforcement,” namely, enlisting a third party to remove defendant’s products from a trade show that was being held in the forum state, went beyond merely informing the defendant of its alleged infringement);[3] Breckenridge, 444 F.3d at 1366 (“Here, in addition to sending letters into the forum state, ... Metabolite has entered into an exclusive license with PamLab, a company that ... conducts business in Florida.” (emphasis added)); Silent Drive, 326 F.3d at 1202 (noting that “[ejxclusive license agreements with respect to the patents at issue with residents of the forum ... have, at least in some circumstances, been held sufficient to confer personal jurisdiction” *1335 (emphasis added)); Inamed, 249 F.3d at 1361 (finding jurisdiction over a patentee who had previously “granted [the plaintiff] an exclusive license to practice the inventions claimed in the [relevant] patents” (emphasis added)); Red Wing Shoe, 148 F.3d at 1362 (noting that in Akro, “[i]n light of the patentee’s substantial contacts with its exclusive licensee, this court determined that the patent was a sufficient nexus between the contacts and the cause of action to establish ‘specific jurisdiction.’” (emphasis added)); Genetic Implant Sys., 123 F.3d at 1458 (finding jurisdiction over a patentee who “contracted with [an exclusive distributor] to sell [the] patented products in [the forum State]” where the agreement was “analogous to a grant of a patent license ” (emphasis added)); Viam, 84 F.3d at 430 (finding jurisdiction where “according to their own submission to this court, [the defendants] have initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court” (emphasis added)); Akro, 45 F.3d at 1543, 1548-49 (finding jurisdiction over patentee who had exclusively licensed the plaintiffs local competitor to practice the relevant patent, where the license agreement also “oblige[d] [the patentee] ‘to defend and pursue any infringement against’ the [relevant] patent” (emphasis added)).[4]
While exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of “other activities” that support specific personal jurisdiction in a declaratory judgment action, the defendant patentee’s own commercialization activity does not. What the paten-tee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because “the federal patent laws do not create any affirmative right to make, use, or sell anything.” Leatherman Tool Group Inc. v. Cooper Indus., Inc., 131 F.3d 1011, 1015 (Fed.Cir.1997). “The franchise which the patent grants, consists altogether in the right to exclude every one from making, using, or vending the thing patented, without the permission of the patentee. This is all that he obtains by the patent.” Bloomer v. McQuewan, 55 U.S. (14 How.) 539, 549, 14 L.Ed. 532 (1852); see also 35 U.S.C. § 154(a)(1) (2000) (“Every patent shall ... grant to the patentee, his heirs or assigns, ... the right to exclude others ....”) (emphasis added).
Thus, it is not surprising that several district courts have held that a defendant patentee’s sales, even of products covered by its own patents in the forum state, do not necessarily relate to the patentee’s amenability to specific personal jurisdiction in actions for declaratory judgment of non-infringement and invalidity of those patents. See, e.g., Polymers, Inc. v. Ultra Flo Filtration Sys., Inc., 33 F.Supp.2d 1008, 1017 (M.D.Fla.1998) (holding that the “distribution of [the patentee’s] own patented goods in Florida is not intimately or sufficiently connected with [the plaintiffs] action to obtain a declaration that [the plaintiffs] goods do not infringe [the pat-entee’s] patents”); DP Envtl. Servs., Inc., v. Bertlesen, 834 F.Supp. 162, 166 (M.D.N.C.1993) (“The stream of commerce theory for asserting personal jurisdiction is inapplicable in a case such as this where the cause of action did not arise from the manufacturer’s products in the forum state.”); Ryobi Am. Corp. v. Peters, 815 F.Supp. 172, 177 (D.S.C.1993) (“A declaratory judgment action involving a patent, when properly brought, does not depend on the actual manufacture of the item by *1336 the patent holder or the patent holder’s licensee.”). But see SRAM Corp. v. Sunrace Roots Enter. Co., 390 F.Supp.2d 781, 787 (N.D.Ill.2005) (holding that a declaratory judgment defendant had “ ‘purposefully directed’ its activities at residents of [the] forum by marketing a product that directly competes with the allegedly infringing [product]”).
Similarly, we have held that mere evidence of sales within the forum of products covered by the relevant patent(s) is insufficient to guarantee specific personal jurisdiction over the patentee. For example, in Breckenridge we noted that specific personal jurisdiction is not proper where the patentee “has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but ... has no dealings with those licensees beyond the receipt of royalty income.” 444 F.3d at 1366 (citing Red Wing Shoe, 148 F.3d at 1357-58). In Red Wing Shoe, we declined to find specific personal jurisdiction over a patentee with thirty-four non-exclusive licensees selling the patented product in the forum State because “none of [the paten-tee’s] licenses requires it to defend or pursue infringement actions involving the [relevant] patent, nor requires [the patentee] to be so nearly involved with its licensees as was the case with the exclusive licensee in Akro.” 148 F.3d at 1359, 1362.
In short, a defendant patentee’s mere acts of making, using, offering to sell, selling, or importing products — whether covered by the relevant patent(s) or not — do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability. Thus, we hold that such sales do not constitute such “other activities” as will support a claim of specific personal jurisdiction over a defendant patentee. While such activities may in the aggregate justify the exercise of general jurisdiction over the patentee, they do not establish a basis for specific jurisdiction in this context.[5] However, based on our precedent, as discussed supra, if the defendant patentee purposefully directs activities at the forum which relate in some material way to the enforcement or the defense of the patent, those activities may suffice to support specific jurisdiction. For example, when the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent by such licensee or contracting party in the forum, the patentee’s contractual undertaking may impose certain obligations to enforce the patent against infringers. By such conduct, the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.
c.
While we are bound by our precedent, it is not without controversy. Even a paten-tee’s exclusive licensing and enforcement activities in the forum raise questions as to the propriety of an assertion of personal jurisdiction over a non-resident defendant. As previously discussed, the Supreme Court has declined to address the exact contours of the “arise out of or related to” language of the specific jurisdiction analysis. See Inamed, 249 F.3d at 1362; 16 James Wm. Moore et al., Moore’s Federal Practice § 108.42[7][a] (3d ed. 2008) (“Although the exercise of specific jurisdiction clearly depends on the existence of some *1337 nexus between the defendant’s contacts and the controversy ... it is not clear how strong this nexus must be.”). Many of the regional circuit courts have adopted restrictive interpretations of this requirement. For example, the First Circuit has held that “[t]he relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. ... [D]ue process demands something like a ‘proximate cause’ nexus.” Harlow v. Children’s Hosp., 432 F.3d 50, 61 (1st Cir.2005) (citations and internal quotation marks omitted). Some circuit courts, such as the Ninth Circuit, “rely on a ‘but for’ test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction.” Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir.1995) (noting that “[t]he question, therefore, is this: but for Royal’s contacts with the United States and California, would Ballard’s claims against the Bank have arisen?”). Our own interpretation of the “arise out of or related to” language is far more permissive than either the “proximate cause” or the “but for” analyses. A patentee’s efforts to license or enforce its patent against unrelated parties in the forum state do not proximately cause a declaratory judgment suit for non-infringement, invalidity and/or unenforceability, nor are these activities a “but for” cause of such a suit. However, we need not confront the soundness of our precedent in the case at hand because even under our more permissive view of the “relates to” requirement, the defendant’s activities alleged in this case do not establish a basis for personal jurisdiction.
3.
a.
Here, Avocent primarily argues that Aten International should be subject to personal jurisdiction in Alabama based on the alleged availability of various Aten International products for sale in the forum state. See Viam, 84 F.3d at 428 (holding that the stream of commerce theory of Beverly Hills Fan could apply in the declaratory judgment context, where the patentee is the defendant). Avocent contends that Aten International’s direct and indirect sales activity in Alabama demonstrates a nationwide distribution network, through which Aten International delivers products to Alabama residents and consequently is susceptible to jurisdiction in Alabama under Viam. Avocent attempts to distinguish the Red Wing Shoe line of cases as inapplicable to patentees such as Aten International that manufacture products and distribute them into the forum, either directly or through the stream of commerce. It argues that in these cases the outcome would have been different if the patentees had been defendant manufacturers of commercial products that entered the forum state.
Aten International does not dispute that products it manufactures may be purchased in Alabama but contends that it has never conducted any business in Alabama; that there is no evidence that Aten International controls the distribution of its products, acted in concert with distributors, or had any knowledge that the likely destination of its products was Alabama; and that Avocent failed to establish that any products sold in Alabama relate to this case or even to the underlying patents. It argues that any sales activity in the United States is attributable to its subsidiary, Aten Technology. Aten International cites several regional circuit cases for the proposition that a corporate subsidiary’s contacts in the forum state cannot be imputed to the parent corporation absent clear and convincing evidence that the parent controls the subsidiary’s activities. See, e.g., Negron-Torres v. Verizon Commc’ns, Inc., 478 F.3d 19, 27 (1st Cir.2007) (declining to *1338 assert jurisdiction over Verizon based on the actions of its subsidiary without strong evidence of control by the parent corporation).
As an initial matter, Avocent makes no attempt to establish that Aten International’s contacts with Alabama, whether through the “stream of commerce” or otherwise, rise to the level of “continuous and systematic” activity sufficient to confer general jurisdiction. The district court rejected Avocent’s assertion of general jurisdiction under a “stream of commerce” theory, Avocent, slip op. at 13, and Avocent apparently abandoned that argument on appeal as it pertains to general jurisdiction. See Appellants’ Reply Br. at 16 (arguing that Aten International’s reference to the “continuous and systematic general business contact” jurisdictional standard is not relevant to this appeal). Accordingly, we focus our analysis on specific jurisdiction, under which Avocent must make a prima facie showing that Aten International “purposefully directed its activities at residents of the forum,” and that Avocent’s declaratory judgment action “arises out of or relates to those activities.” Breckenridge, 444 F.3d at 1363.
The “purposefully directed” prong of the “minimum contacts” analysis requires us to critically examine the roles of Aten International, Aten Technologies, and 10-GEAR. In that regard, Avocent’s complaint is fatally deficient. Avocent’s complaint does not explicitly identify Aten Technologies or IOGEAR, or explain the relationship between these corporate entities. It merely alleges that Aten International engages in unspecified sales and marketing activity “directly or through their agents or affiliates.” Compl. ¶ 4. But as we have held supra, the mere sale of defendant’s products — whether covered by the patents in suit or not — is not sufficient to establish specific personal jurisdiction in a declaratory judgment suit. Thus, Avocent has failed to allege “sufficient activities related to the claim of patent non-infringement and invalidity” as to support the assertion of specific personal jurisdiction. Silent Drive, 326 F.3d at 1202.
Avocent attempts to draw a distinction between manufacturing and non-manufacturing patentees for purposes of personal jurisdiction. However, this distinction is not helpful. As previously explained, the only contacts between Aten International and Alabama that are relevant are those that relate in some material way to the enforcement or defense of the patents at issue. Regardless of how Aten International’s products got to Alabama, and regardless of who sold them there, Avo-cent’s complaint and the declarations it submitted to the district court — even when construed in the light most favorable to Avocent — fail to allege any connection to the patents at issue, let alone the enforcement thereof. See Compl. ¶ 4 (alleging that Aten International “transacts business in this District and elsewhere by making, using, selling, and/or offering for sale products in this District” and that these products are “KVM switch products that enable workstations to communicate with, and switch between, remote computers”); id. ¶ 7 (alleging that Aten International “has transacted business within the State of Alabama”). Nowhere in these documents does Avocent identify activities purposefully directed at the forum and related in any material way to the enforcement or defense of the validity of the patents at issue. This critically undermines its assertion of specific personal jurisdiction.
Avocent’s reliance on Viam is unavailing. In that case, the patentee’s relevant jurisdictional activity included enforcement proceedings involving the same patent in the same court against other alleged in-fringers — a significant contact with the fo *1339 rum materially related to the enforcement of the relevant patent. See Viam, 84 F.3d at 430 (noting that “according to their own submission to this court, [the defendants] have initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court”). Here, by contrast, Aten International and its subsidiary have previously enforced the patents against other parties in the Eastern District of Texas, the Northern District of California, and the International Trade Commission located in Washington, D.C. But Avocent has made no allegation that Aten International has attempted to enforce these patents in any Alabama court. To the extent the dissent contends that Aten International’s enforcement activities in other fora subject it to specific personal jurisdiction in Alabama, post at 1346-47, we respectfully disagree. We are aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific personal jurisdiction everywhere else.
Although we expressed concerns in Viam regarding improper attempts by foreign patentees to shield themselves from domestic litigation, e.g., id. (expressing concern that foreign patentees “would be able to set up domestic fronts through which they could do business without subjecting their patents to the rigorous scrutiny demanded by United States patent law”), we cannot ignore the framework for determining jurisdiction within a given forum, see World-Wide Volkswagen, 444 U.S. at 293, 100 S.Ct. 559 (noting that the Supreme Court has “never accepted the proposition that state lines are irrelevant for jurisdictional purposes”). Moreover, a district court’s refusal to exercise personal jurisdiction over a foreign patentee in a particular state does not foreclose the availability of a domestic forum. By statute, every foreign patentee is subject to jurisdiction in at least one state or in the District of Columbia. Section 293 of U.S.Code title 35 provides that foreign patentees
may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process.... If the person designated cannot be found ... or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction.... The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court. In addition to having personal jurisdic-
tion over Avocent’s patent claims under 35 U.S.C. § 293, and contrary to the dissent’s suggestion, post at 1348-49, the United States District Court for the District of Columbia would have pendent personal jurisdiction over Avocent’s non-patent claims to the extent they form part of the “same case or controversy” as the patent claims. 28 U.S.C. § 1367(a); see Coyle, 340 F.3d at 1348 n. 1 (Fed.Cir.2003) (stating that “the district court would also have personal jurisdiction over defendants as to the two state law claims provided that personal jurisdiction existed as to the patent claim and there was supplemental jurisdiction pursuant to 28 U.S.C. § 1367 existed [sic] as to the state law claims”); Silent Drive, 326 F.3d at 1206 (stating that § 1367(a) “confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the ‘same case or controversy’ requirement is satisfied”); Inamed, 249 F.3d at 1362-63 (holding that the district court had both personal jurisdiction over plaintiffs patent misuse claim and pendent personal jurisdiction over other causes of action); Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 5 (D.C.Cir.1977) (“[T]he concept of pendent personal *1340 jurisdiction may be helpful in achieving the purposes of [35 U.S.C.] § 293 to give American manufacturers relief against harassment by nonresident patentees.”); 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure § 3523.1, at n. 21 (2d ed. Supp.2008) (“Pendent personal jurisdiction permits a court to entertain a claim against a defendant over whom it lacks personal jurisdiction, but only if that claim arises from a common nucleus of operative fact with a claim in the same suit for which the court does have personal jurisdiction over the defendant.”).
Accordingly, Avocent’s allegation that Aten International products may be purchased in Alabama fails to establish either that Aten International “purposefully directed its activities at residents of the forum” or that this action “arises out of or relates to those activities.” Breckenridge, 444 F.3d at 1363.
b.
As an independent basis for personal jurisdiction over Aten International, Avo-cent also argues that jurisdiction is proper under Calder. Avocent contends that the letters sent by Aten International to Avo-cent Huntsville and to Amazon provide personal jurisdiction because the intended effect of the letters was to slow the sale of Avocent’s allegedly infringing products. This argument presumably relates to Avo-cent’s Lanham Act claim for unfair competition, which alleged that Aten International made infringement allegations directly to Avocent’s customers “knowing that each patent is invalid, unenforceable and/or not infringed” by Avocent’s products. Compl. ¶ 19.
Here, as in Breckenridge, “the question of infringement is a critical factor in determining liability under the non-patent claims. * * * [Aten International’s] letters would neither be unjustifiable nor unfair if the implication of infringement contained therein is true. Accordingly, because the non-patent issues in this case are ‘intimately linked to patent law,’ Federal Circuit law regarding due process must be applied to the question of personal jurisdiction over [Aten International] with respect to all claims.” 444 F.3d at 1362. Aten International’s only activity pertinent to Avocent’s Lanham Act claim consists of sending letters alleging patent infringement. In Breckenridge, we noted that “the Federal Circuit provides that a patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer’s home state.” Id. (emphasis added). Thus, while we ultimately found jurisdiction over the paten-tee in Breckenridge based on its “additional activities in the forum state,” namely, an exclusive license, id. at 1366, we would not have accepted jurisdiction based solely on the letters in that case, which included “between ten and twenty letters to vitamin distributors and retailers informing them of the Metabolite patents and PamLab’s exclusive license,” id. at 1360. Similarly, the three letters attributed to Aten International in this case do not subject it to personal jurisdiction in Alabama.
c.
Finally, because the district court did not have personal jurisdiction over Aten International with respect to the patent and Lanham Act claims, it correctly dismissed Avocent’s state law claim for intentional interference with business or contractual relations. Cf. Coyle, 340 F.3d at 1348 n. 1 (“[T]he district court would also have personal jurisdiction over defendants as to the two state law claims provided that personal jurisdiction existed as to the *1341 patent claim and there was supplemental jurisdiction pursuant to 28 U.S.C. § 1367.”) (citing Silent Drive, 326 F.3d at 1206).
III. CONCLUSION
For the above reasons, we conclude that the district court properly dismissed Avo-cent’s claims against Aten International for lack of personal jurisdiction. Thus its judgment is

AFFIRMED.

. We note that while the letter states that Aten Technology owned the patent application, the published application attached to this letter shows the assignee as Aten International.

. This inquiry should not be confused with the “case or controversy” requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). While the Supreme Court recently altered the subject matter jurisdiction landscape by rejecting the "reasonable apprehension of suit” test, see. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed.Cir.2007) (recognizing that "[t]he Supreme Court's opinion in [MedImmune, Inc. v. Gen-entech, Inc., 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ], represents a rejection of our reasonable apprehension of suit test”), the independent requirement of personal jurisdiction over the defendant remains an important and independent limit on the power of the federal courts. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (distinguishing between the "two jurisdictional bed *1333 rocks” of subject matter jurisdiction and personal jurisdiction, rejecting the notion that "subject matter jurisdiction is ever and always the more 'fundamental,' " and clarifying that "[pjersonal jurisdiction, too, is 'an essential element of the jurisdiction of a district ... court,' without which the court is ‘powerless to proceed to an adjudication' ” (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382, 57 S.Ct. 273, 81 L.Ed. 289 (1937))). Indeed, the extent to which declaratory judgment jurisdiction may be more easily found makes the personal jurisdiction inquiry that much more important.
In Viam we noted that the question of personal jurisdiction ... is a question of the power of a judicial forum to decide the issues brought before it. A patentee who seeks to enforce its patent may bring an infringement action in a proper forum, and issues regarding the validity and enforceability of the patent may be raised by the defendant. Under our law, a potential defendant in an infringement suit may, in a proper case, preempt the patentee and initiate a suit challenging the enforcement of the patent. The issues on the merits are essentially the same in either situation; the test for personal jurisdiction, for the forum's power to hear the issues, should be the same.
84 F.3d at 428. This statement should not be construed to conflate the distinct requirements of subject matter and personal jurisdiction. Nor should our commentary in Viam be construed to eviscerate the Supreme Court's longstanding requirement that the "minimum contacts” between the defendant and the forum state must "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State.” Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (quoting McGee v. Int’l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

. The dissent's comparison of this case to Campbell Pet is, with all due respect, inapt. The patentee's extra-judicial enforcement activities in Campbell Pet were directed at the forum state, where the trade show was being held. Here, by contrast, IOGEAR sent the second letter to Amazon in Seattle, Washington — not the Alabama forum. Moreover, what the dissent has generalized as a paten-tee's "commercial-type contact,” post at 1343, amounting to the mere sale of products, had no bearing on the question of specific personal jurisdiction in Campbell Pet. There, the patentee's twelve sales to forum residents were analyzed only with regard to general personal jurisdiction — not specific personal jurisdiction. 542 F.3d at 884 (holding those sales to be too "sporadic and insubstantial” to support general personal jurisdiction).

. The dissent draws "[a]nalogy” to Akro but fails to recognize the absence of any exclusive license or other enforcement obligation in the present case. Post at 1343.

. The dissent states that the majority is "ruling that the commercial activity of a nonresident company in the forum is always irrelevant to personal jurisdiction.” Post at 1344. We make no such sweeping ruling. With all due respect, the dissent’s statement is not only incorrect, but fails to appreciate, inter alia, the distinction between general and specific personal jurisdiction.