# United States Court of Appeals for the Federal Circuit

---

**RADIO SYSTEMS CORPORATION,**
*Plaintiff-Appellant,*

v.

**ACCESSION, INC.,**
*Defendant-Appellee.*

---

2010-1390

---

Appeal from the United States District Court for the Eastern District of Tennessee in Case No. 09-CV-0481, Judge Thomas A. Varlan.

---

Decided: April 25, 2011

---

R. BRADFORD BRITTIAN, Pitts & Brittian, P.C., of Knoxville, Tennessee, argued for the plaintiff-appellant. With him on the brief were ROBERT E. PITTS, PAUL A. FORSYTH and MATTHEW J. STARK.

ROBERT J. BASIL, Collier & Basil, PC, of New York, New York, argued for the defendant-appellee.

---

Before BRYSON, LINN, and DYK, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This is another in a series of cases presenting us with the question whether a patentee's activities directed at the forum state were sufficient to give the forum court personal jurisdiction over the patentee in a declaratory judgment action. The district court in this case held that the defendant's activities were not sufficient to give it personal jurisdiction over the defendant, and we agree.

I

Radio Systems Corporation is a Delaware corporation with its principal place of business in Knoxville, Tennessee. It manufactures several pet-related products, including a patented electronic pet access door (the "SmartDoor"), which unlocks in response to a transmitter worn by the pet. Accession, Inc., is a New Jersey corporation with its principal place of business in Hamilton, New Jersey. Accession's sole employee is its president, Thomas Sullivan. Mr. Sullivan is the named inventor of U.S. Patent No. 7,207,141 ("the '141 patent"), issued on April 24, 2007, and assigned to Accession. The '141 patent is directed to a portable pet access door (the "Wedgit") that can be inserted into sliding glass doors.

In November 2006, Mr. Sullivan sent an unsolicited letter to Radio Systems designed to interest the company in licensing the Wedgit. After Radio Systems did not respond to the solicitation and two subsequent telephone calls, Mr. Sullivan sent another letter to Radio Systems in January 2007 for the same purpose, this time indicating that he had received a notice of allowance from the Patent and Trademark Office ("PTO") for the pending patent on his device. Radio Systems responded by e-mail, asking for the patent application number. Mr. Sullivan answered by

e-mail, providing the application number and suggesting that "we may both benefit from a cooperative effort." Radio Systems did not respond to that e-mail.

In June 2007, Mr. Sullivan e-mailed Radio Systems again, noting that the '141 patent had issued and proposing that Accession supply Radio Systems with Wedgit pet doors for sale to consumers. The parties exchanged correspondence for several months but reached no agreement. Meanwhile, Radio Systems applied for a patent on its SmartDoor device and began marketing it in August 2007.

In February 2009, Mr. Sullivan e-mailed Radio Systems again to tout "mutually beneficial opportunities to bring [the Wedgit] to market." Radio Systems ultimately agreed to meet with Mr. Sullivan to view a demonstration of the Wedgit. Before the meeting, the parties signed a nondisclosure agreement prepared by Radio Systems. In April 2009, Mr. Sullivan traveled to Tennessee to demonstrate the Wedgit to David Anderson, a Radio Systems representative. According to Mr. Sullivan's account of the meeting, he presented the Wedgit and showed Mr. Anderson a product video. Mr. Anderson asked Mr. Sullivan to leave Wedgit prototypes with Radio Systems for further examination, but Mr. Sullivan declined, saying that he planned to use the prototypes in a focus group presentation. Following the meeting, Mr. Sullivan sent several more e-mails to Radio Systems, but as of July 2009 Radio Systems had expressed no interest in his marketing proposal. At that time, Mr. Sullivan advised Radio Systems that he would continue his efforts to commercialize the Wedgit on his own.

In June 2009, the PTO issued a notice of allowance for Radio Systems' patent on the SmartDoor device. Mean-

while, Accession retained legal counsel in New Jersey. On August 20, 2009, Accession's counsel left a voice message with the PTO examiner for the SmartDoor application, alerting the examiner to the existence of Accession's '141 patent. On the same day, Accession's counsel telephoned Radio Systems' counsel and stated his position that the SmartDoor infringed the '141 patent and that interference proceedings would be warranted between the '141 patent and the SmartDoor application. Later that day, Accession's counsel left a voice message with Radio Systems' counsel indicating that Mr. Sullivan should be named as a co-inventor on the SmartDoor application. On August 25, 2009, Accession's counsel sent an e-mail to Radio Systems' counsel asking whether Radio Systems had brought the '141 patent to the attention of the PTO. The next day, the PTO examiner returned the phone call of Accession's counsel. As a result of that conversation, the PTO withdrew the notice of allowance previously issued for the SmartDoor application. On August 28, 2009, Accession's counsel sent an e-mail to Radio Systems' counsel informing him of the communication with the examiner. Finally, on September 1 and September 23, 2009, Accession's counsel sent letters to Radio Systems outlining Accession's infringement allegations and suggesting that the dispute be settled through a licensing agreement.

On November 5, 2009, Radio Systems filed a complaint in the United States District Court for the Eastern District of Tennessee seeking a declaratory judgment of noninfringement and invalidity with respect to the '141 patent. Accession moved to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the case to the United States District Court for the District of New Jersey. The Tennessee district court granted Accession's motion to dismiss in May 2010, and Accession filed

an infringement action in the District of New Jersey shortly thereafter. That action has been stayed pending our decision in this appeal.

## II

A United States district court may exercise personal jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The district court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and the requirements of due process. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). Because Tennessee's long-arm statute is coterminous with due process limitations, *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985); *see* Tenn. Code Ann. § 20-2-214, the jurisdictional issue in this case turns on whether the court's exercise of jurisdiction would be consistent with the requirements of due process.

Radio Systems does not allege that the district court has general jurisdiction over Accession, which has no "continuous and systematic general business contacts" with Tennessee, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Instead, Radio Systems alleges that the district court has specific jurisdiction over Accession based on events related to the instant dispute.

## A

In order to satisfy due process requirements for establishing specific jurisdiction over a defendant, the plaintiff must show that the defendant purposely directed its

activities at residents of the forum and that the plaintiff's claim arises from or relates to those activities. In addition, the plaintiff must satisfy the court that the assertion of personal jurisdiction under the circumstances is reasonable and fair. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), we held that ordinary cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that state. As a matter of patent law policy, we held that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." 148 F.3d at 1360-61.

In subsequent cases, we have held that certain other patent enforcement actions, taken in conjunction with the issuance of cease-and-desist letters, are sufficient to support specific jurisdiction over a patentee in a foreign forum. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009) (collecting cases). However, we have held that not all of a patentee's activities in the forum state are sufficient to create a basis for asserting personal jurisdiction. In *Avocent Huntsville Corp.*, we explained that an action for a declaratory judgment "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit," and that the relevant inquiry for specific jurisdiction is "to what extent . . . the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities." 552 F.3d at 1332 (internal quotation marks and citations omitted). Thus, only those activities of the patentee that

relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action. *Id.* at 1336; *accord Autogenomics*, 566 F.3d at 1020.

The district court in this case concluded that Radio Systems' declaratory judgment action "does not result from alleged injuries that arise out of or relate to" activities by Accession that were purposely directed at Tennessee. The court explained that the only activities relating to the enforcement of Accession's patent that were directed at Tennessee consisted of Accession's counsel's cease-and-desist correspondence with Radio Systems in August and September 2009. All of Accession's activities prior to that point related to its attempts to commercialize the Wedgit or license the '141 patent. The district court discounted Accession's earlier contacts with Radio Systems based on this court's decisions holding that attempts to sell a product or license a patent do not give rise to personal jurisdiction in declaratory judgment actions for non-infringement or invalidity. *See Avocent*, 552 F.3d at 1332.

Radio Systems argues that the district court erred in refusing to consider Accession's contacts with Tennessee prior to the point in August 2009 at which the relationship between the companies became adversarial. Those early contacts included e-mails, phone calls, and letters sent to Radio Systems, as well as Mr. Sullivan's meeting with Radio Systems in Tennessee to demonstrate the Wedgit. Radio Systems distinguishes *Avocent* on the ground that in that case the patentee did not directly contact and visit the declaratory judgment plaintiff in the forum state in an effort to market the patentee's invention.

While the facts of this case differ from those in *Avocent*, the principles of *Avocent* govern this case. We have characterized the rule in *Avocent* as follows: that "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics*, 566 F.3d at 1020, citing *Avocent*, 552 F.3d at 1336. Mr. Sullivan's attempts to interest Radio Systems in a business transaction relating to his product were not "enforcement or defense efforts." Instead, Mr. Sullivan's correspondence with Radio Systems was focused on generating a market for the Wedgit, not on enforcing or defending the '141 patent. Moreover, *Avocent* did not distinguish between commercialization efforts directed generally at residents of the forum state and efforts directed specifically at the plaintiff. *See also Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1356 (Fed. Cir. 2006) (dismissing declaratory judgment action for lack of personal jurisdiction despite patentee's efforts to license products to plaintiffs). The fact that Mr. Sullivan focused on Radio Systems in his effort to commercialize his invention therefore does not render his activities in Tennessee sufficient for the exercise of specific personal jurisdiction.

Radio Systems argues that in *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003), this court "found specific personal jurisdiction to exist based solely upon [forum state] contacts for marketing a patent." *Electronics for Imaging*, however, involved more than marketing efforts. The patentee in *Electronics for Imaging* hired a California attorney to communicate with the California-based plaintiff on the patentee's behalf. The attorney corresponded with the plaintiffs on multiple occasions "to report on the progress of the [patentee's]

pending application." 340 F.3d at 1351. The record in *Electronics for Imaging* reveals that in the course of those communications, the attorney advised the plaintiff's representatives that the patentee had a number of commercially successful patents and that he had previously sued several large companies for patent infringement and won. In addition, according to the plaintiff's vice-president, the patentee referred him to a Los Angeles attorney who prosecuted the patent and said that if his Los Angeles attorney or his attorney in Nevada "could work out a deal," the "price would be lower" because he would not have to pay his attorney to bring an infringement action.

In that context, the attorney-client relationship effectively became an agency relationship in which the principal retained agents in the forum state to assist in the enforcement of its patent rights. *See Blanton v. Womancare, Inc.*, 696 P.2d 645, 649 (Cal. 1985); *Fid. & Cas. Co. v. Abraham*, 161 P.2d 689, 693 (Cal. Dist. Ct. App. 1945). Communications between a forum state attorney and the declaratory judgment plaintiff relating to the enforcement or defense of the patent therefore constitute in-state contacts that are attributable to the patentee and relevant to the exercise of personal jurisdiction. As we explained in *Electronics for Imaging*, such communications "clearly arise out of or are related to" a subsequent declaratory judgment action when they relate to the patent-in-suit. 340 F.3d at 1351.

In addition to hiring forum state attorneys, the defendant in *Electronics for Imaging* engaged in other activity relating to the enforcement or defense of its patent. The defendant "threatened [the plaintiff] with litigation unless [the plaintiff] paid $25 million for the technology," and later "requested $18 million be delivered to him" or

litigation would ensue. *Elecs. for Imaging, Inc. v. Coyle*, No. C01-4853 (N.D. Cal. Mar. 27, 2002). The communication between Accession and Radio Systems prior to August 2009 was focused on the creation of a cooperative business arrangement to market the Wedgit and thus was of an entirely different nature than the enforcement-related activities in *Electronics for Imaging*.

B

Radio Systems next contends that the interactions between Accession's counsel and the PTO give rise to personal jurisdiction over Accession in Tennessee. Radio Systems asks us to view the two telephone calls with the PTO as part of a more extensive enforcement effort directed at Radio Systems' business in Tennessee. The other enforcement-related actions by Accession's counsel in New Jersey consisted of contacting Radio Systems by e-mail and letter in August and September 2009. In those communications, counsel outlined Accession's claim that Radio Systems' SmartDoor was covered by Accession's patent and suggested settling the dispute through a licensing agreement. As we have noted, the e-mails and letters from Accession's counsel to Radio Systems are insufficient to give rise to personal jurisdiction in light of the principles of *Red Wing Shoe*. Warnings and threats of infringement suits are typical in such correspondence, as are offers to license. Thus, if Accession's contacts with the PTO are to give rise to jurisdiction as extra-judicial enforcement efforts, they must be sufficient by themselves to do so.

In *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008), we held that the district court had jurisdiction over a patentee in a declaratory judgment action based on the patentee's conduct in interfering with the plaintiff's

business at a trade convention in the forum state. 542 F.3d at 886-87. The patentee's actions in that case, which constituted a form of self-help patent enforcement, consisted of "t[aking] steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff." *Id.* at 887. We held those extrajudicial enforcement activities sufficient, in combination with the defendant's other enforcement efforts, to subject the patentee to jurisdiction in a foreign forum.

In *Avocent*, we distinguished *Campbell Pet* on the ground that in that case, the extrajudicial enforcement activities occurred within the forum state. Here, the district court held that Accession's contacts with the PTO did not support Radio Systems' jurisdictional argument because those contacts were directed at Virginia (the site of the PTO) rather than Tennessee. In doing so, the district court correctly followed our holding in *Avocent*.

Radio Systems relies on two cases from other circuits. In *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), the Tenth Circuit found personal jurisdiction over a patentee appropriate in Colorado where the patentee had contacted an Internet retailer headquartered in California regarding the plaintiff's alleged infringement activities, resulting in the retailer's withdrawal of the plaintiff's products from its website. The court reasoned that the patentee's extrajudicial enforcement efforts, although they occurred in California, were targeted at the plaintiff's business interests in Colorado. 514 F.3d at 1082. Radio Systems also points to *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000), overruled on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc). In that trademark case, a Virginia-based registrar of Internet domain names sus-

pended the plaintiff's domain name in the wake of correspondence from the defendant, a company headquartered in Georgia.  Finding that the defendant's correspondence with the registrar was intended to affect the plaintiff in California and went beyond cease-and-desist correspondence, the Ninth Circuit held the defendant subject to personal jurisdiction in California when the plaintiff brought a declaratory judgment action there.  223 F.3d at 1088-89.

Radio Systems argues that *Dudnikov* and *Bancroft & Masters* support its argument that Accession's contacts with the PTO support personal jurisdiction in the district court in Tennessee, but that argument runs afoul of our decision in *Avocent*.  We made clear in *Avocent* that enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum, and that decision is controlling here.

## C

Finally, Radio Systems argues that Accession consented to jurisdiction in Tennessee by entering into the nondisclosure agreement in connection with the April 2009 meeting in Tennessee.  That agreement contained a forum selection clause, which according to Radio Systems constitutes Accession's consent to jurisdiction in the Tennessee district court.  The clause in question provides that Accession

> consents to the personal jurisdiction of, and agrees that exclusive jurisdiction shall reside in, all courts of the State of Tennessee and the U.S. District Court for the Eastern District of Tennessee regarding any cause of action arising under

this Agreement or arising out of the subject mat-
ter relating to this Agreement.

Radio Systems concedes that its declaratory judgment
action does not arise under any of the provisions of the
disclosure agreement. It argues, however, that the action
arises out of "subject matter relating to" the agreement.

The stated purpose of the agreement was to facilitate
"discussions for the purpose of evaluating the interest of
Radio Systems to engage in a transaction or enter into a
relationship with [Accession] pertaining to the Confiden-
tial Information and, if desired, to pursue such relation-
ship or transaction." The entire agreement addressed
confidential information that may be furnished by Acces-
sion to Radio Systems. "Confidential Information" was
defined as follows:

> "Confidential Information" means information
> that has been maintained in confidence by [Acces-
> sion] and is identified as confidential . . . . Infor-
> mation that (a) is or becomes a part of the public
> domain through legitimate means; [or] (b) can be
> shown to be in the possession of Radio Systems at
> the time of the disclosure . . . shall not be consid-
> ered Confidential Information.

At the time the agreement was signed in February 2009,
the contents of the '141 patent, issued in April 2007, had
become "part of the public domain through legitimate
means." In addition, the SmartDoor had been in the
marketplace since August 2007, meaning that it was
clearly "in the possession of Radio Systems" at all times
after the agreement was signed. Thus, by its terms, the
agreement did not pertain to the '141 patent or the poten-
tially infringing device, the SmartDoor. The record does

not reveal that Accession made any disclosures relating to matters other than the Wedgit, which is not directly at issue in Radio Systems' action. Because this action did not arise out of the subject matter of the confidential disclosure agreement, the forum selection clause of that agreement has no effect on the question of personal jurisdiction.

Accordingly, we sustain the district court's determination that the contacts between Accession and the State of Tennessee were insufficient to give the court personal jurisdiction over Accession. We therefore uphold the district court's order dismissing this action.

**AFFIRMED**