# United States Court of Appeals
# for the Federal Circuit

———————————

**MAXCHIEF INVESTMENTS LIMITED,**
*Plaintiff-Appellant*

**v.**

**WOK & PAN, IND., INC.,**
*Defendant-Appellee*

———————————

2018-1121

———————————

Appeal from the United States District Court for the Eastern District of Tennessee in No. 2:15-cv-00153-JRG-MCLC, Judge J. Ronnie Greer.

———————————

Decided: November 29, 2018

———————————

MICHAEL J. BRADFORD, Luedeka Neely Group, PC, Knoxville, TN, argued for plaintiff-appellant. Also represented by MARK P. CROCKETT.

PATRICIA LOUISE RAY, D&R IP Law Firm, APLC, Alhambra, CA, argued for defendant-appellee. Also represented by TONY WONG, Monterey Park, CA.

———————————

Before DYK, REYNA, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

Maxchief Investments Limited ("Maxchief") appeals from the judgment of the District Court for the Eastern District of Tennessee. The district court dismissed Maxchief's declaratory judgment action against Wok & Pan, Ind., Inc. ("Wok") for lack of personal jurisdiction and dismissed Maxchief's tortious interference claim for lack of subject matter jurisdiction. Because Wok lacked sufficient contacts with the forum state of Tennessee for personal jurisdiction as to both the declaratory judgment claim and the tortious interference claim, we affirm.

BACKGROUND

Maxchief makes plastic folding tables. It has its principal place of business in China and distributes one of its tables—the UT-18 table—exclusively through Meco Corporation ("Meco"), which is located in Greenville, Tennessee. Meco sells the UT-18 tables to retailers such as Staples, Inc. ("Staples") and The Coleman Company ("Coleman"), which in turn sell the tables to consumers.

Wok competes with Maxchief in the market for plastic folding tables, and also has its principal place of business in China. Wok is the owner of U.S. Patent Nos. 5,957,061, 8,881,661, 8,931,421, and 9,089,204 (collectively, "the Wok patents"), which are directed to folding tables.

Two separate actions are relevant here. In February 2015, Wok filed suit against Maxchief's customer, Staples, in the Central District of California, alleging that Staples' sale of Maxchief's UT-18 table infringed the Wok patents. *See Wok & Pan, Ind., Inc. v. Staples, Inc.*, No. 2:15-cv-00809 (C.D. Cal.) ("the Staples action"). Staples requested that Meco, the distributor of the table, defend and indemnify Staples. Meco in turn requested that Maxchief defend and indemnify Meco and Staples. The Staples action is stayed pending the outcome of this case.

Separate from the Staples action, Maxchief filed this action against Wok in the Eastern District of Tennessee. In its amended complaint, filed on September 2, 2016, Maxchief sought declarations of non-infringement or invalidity of all claims of the Wok patents. The complaint also alleged tortious interference with business relations under Tennessee state law. Wok moved to dismiss all claims for lack of personal jurisdiction.[1] There is no contention here that Wok is subject to general jurisdiction in Tennessee. Maxchief claims only that Wok is subject to specific personal jurisdiction.

On September 29, 2017, the district court dismissed the declaratory judgment claim for lack of personal jurisdiction. *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, No. 2:15-CV-153, 2017 WL 6601921 (E.D. Tenn. Sept. 29, 2017). The court held that Maxchief failed to allege that Wok had sufficient minimum contacts with Tennessee, because although Wok "sought to enforce the patents against other parties in other courts," Wok "did not seek to enforce [its] patents in the forum state of Tennessee." *Id.* at *7.

With respect to the state law tortious interference claim, the district court noted that Maxchief had not "explicitly allege[d]" that the court had subject matter jurisdiction over this claim, and indicated that amendment of the complaint would be futile and unduly prejudicial to Wok because "there is no independent federal basis

---

[1]    Maxchief's complaint also alleged unfair competition under the Lanham Act, 15 U.S.C. § 1125, but in response to Wok's motion to dismiss for lack of personal jurisdiction, Maxchief did not argue that personal jurisdiction existed over this claim. The district court therefore dismissed the unfair competition claim for lack of personal jurisdiction, and that claim is not involved in this appeal.

for subject matter jurisdiction on this claim." *Id.* at \*9–10.

Maxchief timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The central issue in this case is whether there is specific personal jurisdiction over Wok for the declaratory judgment and state law tortious interference claims. Given the centrality of patent law to these claims, here personal jurisdiction is governed by the law of our circuit. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (stating that Federal Circuit law applies to personal jurisdiction over claim seeking declaratory judgments of non-infringement and invalidity); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (holding that Federal Circuit law applies to personal jurisdiction over state law claims where the "resolution of the patent infringement issue" would be a "significant factor" in resolving those state law claims). We review the question of personal jurisdiction de novo. *Xilinx*, 848 F.3d at 1352.

## I. DECLARATORY JUDGMENT CLAIM

The parties dispute whether personal jurisdiction exists over Counts I, II, and III of the complaint, which seek declaratory judgments of non-infringement or invalidity of three of the Wok patents.

Personal jurisdiction must comport with the state's long-arm statute and with due process under the U.S. Constitution. *Id.* Tennessee's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution. *See First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 383–84 (Tenn. 2015) (citing Tenn. Code Ann. § 20-2-214(a)(6)). Thus, the sole question here is whether the

exercise of jurisdiction would be consistent with due process.

Due process requires that a defendant have sufficient "minimum contacts" with the forum state such that the suit not offend "traditional notions of fair play and substantial justice." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1785 (2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts inquiry involves two related requirements. First, the defendant must have purposefully directed its conduct at the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Second, the claim must "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (brackets omitted).

A declaratory judgment claim arises out of the patentee's contacts with the forum state only if those contacts "relate in some material way to the enforcement or the defense of the patent." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008). Accordingly, in this context the minimum contacts prong requires some enforcement activity in the forum state by the patentee. *Id.* For example, we have found minimum contacts where the patentee sent infringement notice letters to an entity doing business in the forum state and traveled there to discuss the alleged infringement, *see Xilinx*, 848 F.3d at 1354, or where the patentee entered into an exclusive licensing agreement with an entity in the forum state that would permit the licensee to litigate infringement claims against third party infringers of the licensed patents, *see Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006)

(citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995)).[2]

Maxchief contends that Wok's lawsuit against Staples in the Central District of California created sufficient contacts with Tennessee because the suit sought a broad injunction against "all those in active concert" with Staples, including its "distributors," and the distributor of Staples' table was Meco, a Tennessee resident. Appellant's Br. at 16. Maxchief maintains this lawsuit had "effects" in Tennessee because Wok's requested injunction would extend to Meco, and Maxchief would respond to any injunction by changing its Tennessee activities. According to Maxchief, the Staples lawsuit therefore created jurisdiction under *Calder v. Jones*, 465 U.S. 783, 791 (1984), where the Supreme Court held that a California court had jurisdiction over two Florida newspapermen because their intentional conduct in Florida was calculated to cause injury in California.

Contrary to Maxchief's argument, it is not enough that Wok's lawsuit might have "effects" in Tennessee. Rather, jurisdiction "must be based on intentional conduct by the defendant" directed at the forum. *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *see* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069.1 (4th ed. 2018) ("Wright & Miller") ("The 'effects test' continues to have viability, but only when the defendant's

---

[2]    Maxchief points to Wok's shipments and sales of tables in Tennessee to establish minimum contacts, but concedes that "the personal jurisdiction inquiry for patent declaratory judgment claims . . . focuses on patent enforcement activities directed at residents of a forum." Appellant's Br. at 15. Shipments and sales of patented products by the patent holder are not enforcement activities, and thus do not qualify as relevant minimum contacts. *See Avocent*, 552 F.3d at 1336.

conduct both has an effect in the forum state and was directed at the forum state by the defendant . . . ."). In *Calder*, the defendants "expressly aimed" "their intentional, and allegedly tortious, actions" at California: they relied on phone calls to California sources for their article, wrote the story about the plaintiff's activities in California, and caused reputational injury in California by writing the allegedly libelous article and causing it to be circulated in the state. *See* 465 U.S. at 788–90. "Indeed, because publication to third persons is a necessary element of libel, the defendants' intentional tort [in *Calder*] actually occurred *in* California." *Walden*, 571 U.S. at 288 (internal citation omitted). By contrast, Wok's lawsuit against Staples—filed in California against a California resident—was directed at California, not Tennessee. The lawsuit alleged that the actions taken by a non-resident of Tennessee (Staples) infringed the patents. The fact that the requested injunction might apply to a Tennessee resident (Meco) and non-party to the action (acting in concert with the defendant) is too attenuated a connection to satisfy minimum contacts.

This case is analogous to *Walden*. There, Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search while the plaintiffs were in Georgia preparing to board a plane bound for Nevada. *Id.* at 279–81. The Court held that the Nevada courts lacked jurisdiction even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada" because the defendant's "relevant conduct occurred entirely in Georgia." *Id.* at 289, 291. The defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289. So too here. Wok's California lawsuit did not create sufficient contacts with Tennessee simply because Wok directed the lawsuit at an entity (Staples) that Wok knew had a Tennessee connection (Meco).

In support of its position, Maxchief also relies on *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194 (Fed. Cir. 2003). That reliance is misplaced. In *Silent Drive*, we held that the defendants created minimum contacts with Iowa by making efforts to enforce a Texas state court injunction against the plaintiff, an Iowa resident. *See id.* at 1204–05. Specifically, the defendants sent letters to the plaintiff in Iowa detailing the serious consequences of disobeying the Texas injunction, which specifically named the plaintiff and the location of its headquarters in Iowa. *Id.* Under those circumstances, the defendants' enforcement efforts created sufficient contacts with Iowa. Unlike the situation in *Silent Drive*, here there is no allegation that Wok has sent letters to a Tennessee resident in an attempt to enforce an out-of-state injunction against it.

Finally, Maxchief argues that Wok created minimum contacts related to patent enforcement by sending an infringement notice letter to Maxchief's lawyer in Tennessee. As discussed more fully below, because this letter alleged infringement by Coleman, a Kansas company that is not alleged to operate in Tennessee, the letter constitutes a contact with Kansas, not Tennessee, regardless of the fact that it was mailed to a lawyer in Tennessee. For this reason alone there is no personal jurisdiction in Tennessee over the declaratory judgment claim. Alternatively, even if the letter qualified as a minimum contact with Tennessee, under *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), merely sending notice letters of patent infringement does not satisfy the "fair play and substantial justice" prong of the personal jurisdiction inquiry, because principles of fair play "afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Id.* at 1360–61; *cf. Xilinx*, 848 F.3d at 1354 (personal jurisdiction over declaratory judgment

action proper where patentee sent notice letters and visited plaintiff in the forum state).

Accordingly, the district court lacked personal jurisdiction over the declaratory judgment claim.

## II. TORTIOUS INTERFERENCE CLAIM

Maxchief also asserted a claim for tortious interference under Tennessee state law, alleging that Wok damaged Maxchief's business relationships with its customers "by sending objectively and subjectively baseless assertions of patent infringement" to these customers. J.A. 95–96. The district court dismissed this claim for failure to sufficiently allege original subject matter jurisdiction and concluded that an amendment to include such an allegation should not be permitted. It concluded that "there is no independent federal basis for subject matter jurisdiction on this claim, [and] the Court need not reach the issue of whether the Court has personal jurisdiction." J.A. 15. We need not decide the issue of subject matter jurisdiction because here there is no personal jurisdiction over the tortious interference claim.[3] *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

---

[3]    Contrary to the district court's conclusion that "there is no independent federal basis for subject matter jurisdiction on this claim," there may well be original subject matter jurisdiction over this claim under 28 U.S.C. § 1338. Here, to prevail on its tortious interference claim, Maxchief would have to prove that Wok engaged in "unfounded litigation," *see Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 n.5 (Tenn. 2002), which in turn would require Maxchief to prove non-infringement or invalidity of Wok's patents. Our past cases have "concluded that similar state law claims premised on allegedly false statements about patents raised a substantial question of federal patent law," thus conferring jurisdiction

We conclude that there is no personal jurisdiction over the tortious interference claim. It may be that sending a single notice letter into the forum state, directed to a customer doing business in the state, could provide personal jurisdiction over a tortious interference claim. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.") As explained above, in the context of

---

under § 1338. *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013) (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998)).

These cases "may well have survived the Supreme Court's decision" in *Gunn v. Minton*, 568 U.S. 251 (2013). *See Forrester*, 715 F.3d at 1334. To be sure, in *Gunn* the mere existence of a patent law issue did not confer § 1338 federal jurisdiction over a claim alleging malpractice in the handling of a patent case. *Id.* at 259–61; *Forrester*, 715 F.3d at 1334; *Xitronix Corp. v. Kla-Tencor Corp.,* 882 F.3d 1075, 1076 (Fed. Cir. 2018). But because a tortious interference claim like the one presented here involves determining infringement and validity, this is a situation in which there is potential for "inconsistent judgments between state and federal courts," *see Forrester*, 715 F.3d at 1334, a circumstance that *Gunn* itself indicated could support federal jurisdiction, 568 U.S. at 261–62. *See also Xitronix*, 882 F.3d at 1078 (holding that a *Walker Process* monopolization claim "does not present a substantial issue of patent law" in part because "[t]here is no dispute over the validity of the claims"). We leave this issue for another day.

declaratory judgment claims, notice letters typically satisfy the "minimum contacts" prong. *See Xilinx*, 848 F.3d at 1354; *Red Wing*, 148 F.3d at 1360. The same is true for tortious interference claims predicated on false allegations of patent infringement: in both contexts, the patentee purposefully directs activities at the forum state by sending notice letters to residents of the state. In the declaratory judgment context, notice letters do not suffice for personal jurisdiction because they do not satisfy the "fair play and substantial justice" prong due to policy considerations unique to patent law. *See Red Wing*, 148 F.3d at 1360–61; *Silent Drive*, 326 F.3d at 1206. But those policy considerations, which are premised upon the interest in patent enforcement, do not apply to state law tortious interference claims, which primarily serve to protect the business relationships of in-state businesses. *See Silent Drive*, 326 F.3d at 1206 (explaining that the patent-specific policy concerns discussed in *Red Wing* do not apply to "state court injunctions, which are designed to operate primarily in the forum"). Thus, a single letter directed to a business in the forum state could well create personal jurisdiction over a tortious interference claim.

But here, there is no claim that the allegedly infringing entity receiving Wok's notice letter—Coleman—was a resident of the forum state or did business there. To the contrary, Maxchief's complaint refers to "The Coleman Company, Inc. of Wichita, Kansas." J.A. 89. Thus, Wok's letter alleging infringement by Coleman is properly considered a contact with Kansas, not Tennessee. Wok sent its letter to Maxchief's lawyer, who was responding on Coleman's behalf and was located in Tennessee. We have repeatedly held, however, that merely sending a notice letter to a lawyer in the forum state does not constitute activity directed at the forum state where the entity alleged to infringe does not operate in the state. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (holding that a letter alleging infringement of a

California resident was "directed at" California; "the fact that [the lawyer receiving the letter] was located in New York is immaterial"); *Akro*, 45 F.3d at 1546 (holding that notice letters were directed to the allegedly infringing entity in Ohio, not to the entity's lawyer in North Carolina). Accordingly, Wok's letter alleging infringement by Coleman was directed to Coleman in Kansas, not the lawyer responding on Coleman's behalf in Tennessee.

In sum, the district court lacked personal jurisdiction over both the declaratory judgment and tortious interference claims.

CONCLUSION

We hold that Maxchief has not established that personal jurisdiction over Wok is proper in Tennessee. Accordingly, we affirm the district court's dismissal of Maxchief's complaint.

**AFFIRMED**

COSTS

No costs.