# United States Court of Appeals for the Federal Circuit

---

**SNAPRAYS, DBA SNAPPOWER,**
*Plaintiff-Appellant*

**v.**

**LIGHTING DEFENSE GROUP,**
*Defendant-Appellee*

---

2023-1184

---

Appeal from the United States District Court for the District of Utah in No. 2:22-cv-00403-DAK, Senior Judge Dale A. Kimball.

---

Decided: May 2, 2024

---

ELLIOTT J. WILLIAMS, Stoel Rives LLP, Portland, OR, argued for plaintiff-appellant. Also represented by NATHAN C. BRUNETTE; BRIAN PARK, Seattle, WA.

JEFFREY A. ANDREWS, Yetter Coleman, LLP, Houston, TX, argued for defendant-appellee. Also represented by DAVID JOSHUA GUTIERREZ, CHRISTOPHER JOHNSON.

---

Before MOORE, *Chief Judge*, LOURIE and DYK, *Circuit Judges*.

MOORE, *Chief Judge.*

SnapRays, d/b/a SnapPower (SnapPower) appeals a judgment of the United States District Court for the District of Utah dismissing its complaint for declaratory judgment of noninfringement against Lighting Defense Group (LDG) for lack of personal jurisdiction. Because we conclude LDG purposefully directed extra-judicial patent enforcement activities at SnapPower in Utah, we reverse and remand for further proceedings.

## BACKGROUND

LDG is a Delaware limited liability company with its principal place of business in Arizona. LDG owns U.S. Patent No. 8,668,347. The '347 patent relates to a cover for an electrical receptacle including a faceplate and a transmission tab configured to be electrically connected to the receptacle. '347 patent at Abstract.

SnapPower is a Utah company with its principal place of business in Utah. SnapPower designs, markets, and sells electrical outlet covers with integrated guide lights, safety lights, motion sensor lights, and USB charging technology. These activities take place in Utah. J.A. 144. SnapPower sells its products on Amazon.com.

Amazon offers a low-cost procedure called the Amazon Patent Evaluation Express (APEX) "[t]o efficiently resolve claims that third-party product listings infringe utility patents." J.A. 160. Under APEX, a third-party determines whether a product sold on Amazon.com likely infringes a utility patent, and if so, Amazon removes the listing from Amazon.com. J.A. 163. To initiate an evaluation under APEX, a patent owner submits an APEX Agreement to Amazon which identifies one claim of a patent and up to 20 allegedly infringing listings. J.A. 161. Amazon then sends the APEX Agreement to all identified sellers. J.A. 160. Each seller has three options to avoid automatic removal of their accused listings: (1) opt into the APEX program and

proceed with the third-party evaluation; (2) resolve the claim directly with the patent owner; or (3) file a lawsuit for declaratory judgment of noninfringement. J.A. 66–67. If the seller takes no action in response to the APEX Agreement, the accused listings are removed from Amazon.com after three weeks. J.A. 160.

In May 2022, LDG submitted an APEX Agreement alleging certain SnapPower products sold on Amazon.com infringed the '347 patent. Amazon notified SnapPower of the APEX Agreement and the available options. J.A. 66–67. After receiving the notification, SnapPower and LDG exchanged emails regarding the notice. J.A. 95. The parties also held a conference call, but no agreement was reached.

SnapPower subsequently filed an action for declaratory judgment of noninfringement. LDG moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court granted LDG's motion, holding it lacked specific personal jurisdiction over LDG. *SnapRays, LLC v. Lighting Def. Grp. LLC*, No. 2:22-CV-403-DAK-DAO, 2022 WL 16712899 (D. Utah Nov. 4, 2022) (*Decision*).

The district court concluded LDG lacked sufficient contacts with Utah for it to exercise specific personal jurisdiction. *Id.* at *5. Specifically, the district court found SnapPower did not demonstrate LDG purposefully directed activities at SnapPower in Utah, or that the action arose out of or related to any LDG activities in Utah. *Id.* Instead, the district court found LDG's allegations of infringement were directed toward Amazon in Washington, where the APEX Agreement was sent. *Id.* at *4. The district court found that while there may have been foreseeable effects in Utah, there was no evidence that LDG reached out to Utah except in response to SnapPower's communications. *Id.* The district court also noted that under Federal Circuit law, principles of fair play and substantial justice support a finding that LDG is not subject to

specific personal jurisdiction in Utah. *Id.* at \*5 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998)). SnapPower appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Personal jurisdiction is a question of law that we review de novo. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). This appeal involves only claims of patent noninfringement, so "we apply Federal Circuit law because the jurisdictional issue is intimately involved with the substance of the patent laws." *Id.* (internal quotation marks omitted) (quoting *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Utah's long-arm statute is "extended to the fullest extent allowed by due process of law." *Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999). Therefore, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed*, 249 F.3d at 1360.

Here, where the parties agree there is no general jurisdiction over LDG, we have set forth a three-factor test for whether specific personal jurisdiction comports with due process: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (citing *Inamed*, 249 F.3d at 1360). "The first two factors comprise the 'minimum contacts' portion of the

jurisdictional framework. . . ." *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018).  Where the first two factors are satisfied, specific jurisdiction is "presumptively reasonable." *Xilinx*, 848 F.3d at 1356.  The burden then shifts to the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

I

SnapPower argues that LDG purposefully directed enforcement activities at Utah when it initiated the APEX program.  We agree LDG purposefully directed its activities at SnapPower in Utah, intending effects which would be felt in Utah, and conclude this satisfies the first element of our test for specific personal jurisdiction.  LDG intentionally submitted the APEX Agreement to Amazon.  The APEX Agreement identified SnapPower listings as allegedly infringing.  LDG knew, by the terms of APEX, Amazon would notify SnapPower of the APEX Agreement and inform SnapPower of the options available to it under APEX. J.A. 160.  If SnapPower took no action, its listings would be removed, which would necessarily affect sales and activities in Utah.  SnapPower therefore sufficiently alleged LDG "undertook intentional actions that were expressly aimed at th[e] forum state," and "foresaw (or knew) the effects of its action would be felt in the forum state." *Dudnikov*, 514 F.3d at 1077.  This satisfies the first factor.

This decision is consistent with our sister circuits which held extra-judicial enforcement activities, even when routed through a third-party, satisfy purposeful direction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008); *Bancroft & Masters, Inc. v. August National Inc.*, 223 F.3d 1082 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (holding that "the 'brunt' of the harm need

not be suffered in the forum state" and "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state").

In *Dudnikov*, the Tenth Circuit concluded a Colorado court had specific personal jurisdiction over a copyright owner where that owner submitted a notice of claimed infringement (NOCI) to eBay's Verified Rights Owner (VeRO) program. *Dudnikov*, 514 F.3d at 1068. Under the VeRO program, eBay automatically terminated the plaintiffs' auction when a NOCI was submitted. *Id.* The court reasoned that while the defendants' NOCI was technically directed at California, where eBay was located, defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident, and neither the lack of defendants' physical presence in Colorado nor the fact that they used a California-based entity to effectuate this purpose diminish this fact." *Id.* at 1076.

The Ninth Circuit reached a similar conclusion in *Bancroft*. There, the court concluded a California district court had specific personal jurisdiction over a defendant who sent a letter to Network Solutions, Inc. (NSI), the sole registrar of domain names in the United States at the time, challenging plaintiff's use of a domain name. *Bancroft*, 223 F.3d at 1084–85. Like *Dudnikov*, defendant's letter automatically triggered NSI's dispute resolution process, which would result in the plaintiff losing the domain name unless a declaratory judgment action was filed. *Id.* at 1085. The court reasoned the defendant acted intentionally when it sent the letter, and even though the letter was sent to NSI in Virginia, it was expressly aimed at the plaintiff in California because it individually targeted the plaintiff, a California corporation, and the effects would foreseeably be felt primarily in California. *Id.* at 1088.

LDG argues our precedent requires a different outcome. In *Avocent*, Avocent argued the purposeful direction

element was satisfied by letters sent by the defendant to Amazon and Avocent because "the intended effect of the letters was to slow the sale of Avocent's allegedly infringing products." 552 F.3d at 1340. We held sending the letters did not constitute purposefully directed activities because "a patent owner may, without *more*, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer's home state." *Id.* (emphasis added) (quoting *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006)). Importantly, the letters sent by Aten did not have any automatic effect. In other words, the letters could be ignored without automatic consequences to Avocent and Avocent's business activities. The APEX Agreement goes beyond a cease and desist letter because, absent action by SnapPower in response to the APEX Agreement, SnapPower's listings would have been removed from Amazon.com. J.A. 67. The automatic takedown process, which would affect sales and activities in the forum state, is the "more" *Avocent* envisioned.

Second, LDG argues we are bound by *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785 (Fed. Cir. 2011), where we rejected the logic of *Dudnikov* and *Bancroft*. We do not agree. In *Radio Systems*, we held interactions between the defendant's counsel and the Patent and Trademark Office (PTO) did not give rise to personal jurisdiction. 638 F.3d at 792. The defendant in *Radio Systems* alerted the PTO to the existence of the patent in question during examination of plaintiff's patent. *Id.* at 788. The defendant did not initiate extra-judicial patent enforcement or reach into the forum state to affect allegedly infringing sales. To the extent LDG argues *Radio Systems* stands for the idea that *in personam* patent enforcement within the forum state is necessary to create specific personal jurisdiction, courts have held otherwise. *See, e.g.*, *Trimble Inc. v. PerDiem Co. LLC*, 997 F.3d 1147, 1155–56 (Fed. Cir. 2021) (describing relevant contacts such as sending

communications into the forum state); *see also Burger King*, 471 U.S. at 467 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").

Third, LDG argues we also rejected *Dudnikov* and *Bancroft* in *Maxchief Investments, Ltd. v. Wok & Pan Industry, Inc.*, 909 F.3d 1134 (Fed. Cir. 2018). We do not agree. In *Maxchief*, we held a patentee's suit against a company in California did not give rise to specific personal jurisdiction over the patentee in Tennessee, the home state of a downstream distributor of the California company. 909 F.3d at 1138. "[I]t is not enough that [the patentee's] lawsuit might have 'effects' in Tennessee. Rather, jurisdiction 'must be based on intentional conduct by the defendant' directed at the forum." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). The lawsuit filed in California was directed at California, not Tennessee, and any effects that might be felt in Tennessee were too attenuated to satisfy minimum contacts. *Id.* at 1139. There was no enforcement action, or any action at all, taken against the Tennessee distributor or directed at Tennessee. Here, however, LDG purposefully directed the APEX Agreement, through Amazon in Washington, at SnapPower in Utah. LDG's express aim was the removal of SnapPower's Amazon.com listings, which would necessarily affect sales, marketing, and other activities in Utah.

Fourth, LDG argues *Walden v. Fiore*, 571 U.S. 277, (2014), requires affirmance. The Supreme Court in *Walden* held Nevada did not have specific personal jurisdiction over a Drug Enforcement Agency (DEA) officer in a suit seeking money damages under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Walden*, 571 U.S. at 281. The Court explained "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection

with the forum State that is the basis for its jurisdiction over him." *Id.* at 285 (citing *Burger King*, 471 U.S. at 478). The Court concluded that the defendant's actions of approaching, questioning, searching, and seizing the money of plaintiffs in the Atlanta airport was not directed at Nevada, the home state of the plaintiffs. *Id.* at 288. The Court also concluded that drafting a "false probable cause affidavit" in Georgia, sent to the United States Attorney's Office in Georgia, did not connect the defendant to Nevada. *Id.* The plaintiffs' connections to Nevada did not satisfy minimum contacts of the defendant with Nevada. *Id.* at 289.

The *Walden* Court distinguished the result in *Calder v. Jones*, 465 U.S. 783 (1984), where the out-of-state action "connected the defendants' conduct to *California*, not just to a plaintiff who lived there." *Id.* at 288 (emphasis in original). In *Calder*, the Court found specific personal jurisdiction where an out-of-state defendant wrote an allegedly libelous article about a resident of California. *Calder*, 465 U.S. at 791. The *Walden* Court explained that the effects of the alleged libel, loss of reputation through communication to third persons, connected the defendant to California and not just the resident of California. *Walden*, 465 U.S. at 287. Here as well, the intended effect would necessarily affect marketing, sales, and other activities within Utah. We therefore conclude LDG's actions were purposefully directed at residents of Utah.

## II.

The second factor in the test for whether specific personal jurisdiction comports with due process asks whether the claim arises out of or relates to the defendant's activities with the forum. *Xilinx*, 848 F.3d at 1353. LDG argues SnapPower's action for declaratory judgment of noninfringement does not arise from or relate to any activity by LDG in Utah because the APEX Agreement was sent to Washington, not Utah. Because we hold LDG's action of submitting the APEX Agreement was directed towards

SnapPower in Utah and aimed to affect marketing, sales, and other activities in Utah, we also conclude SnapPower's suit arises out of defendant's activities with the forum.

## III.

Having satisfied the first two factors, specific jurisdiction is "presumptively reasonable." *Xilinx*, 848 F.3d at 1356. LDG argues, under the third factor, the assertion of specific personal jurisdiction over it in Utah would be unfair and unreasonable. The "crux" of LDG's argument is "based on concerns about how ruling for SnapPower in this matter opens the floodgates of personal jurisdiction and allow lawsuits against any APEX participant anywhere in the country." Response Br. at 51. The district court agreed with LDG, noting under our case law, "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Decision* at \*5 (quoting *Red Wing Shoe*, 148 F.3d at 1360–61)). We conclude LDG did not meet its burden to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

First, we are unpersuaded that our holding will open the floodgates of personal jurisdiction, or that such a result is inherently unreasonable. Parties who participate in APEX by submitting an Agreement will only be subject to specific personal jurisdiction where they have targeted a forum state by identifying listings for removal that, if removed, affect the marketing, sales, or other activities in that state. LDG has not presented any compelling argument for why this result is unreasonable.

Second, our holding does not disturb the policy of *Red Wing Shoe*. *Red Wing Shoe* held principles of fair play and substantial justice protected a patentee from being subject to specific personal jurisdiction in a forum where the only contact with the forum is sending a cease and desist letter.

148 F.3d at 1361. We explained that a "patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Id.* Here, LDG did more than send a cease and desist letter. LDG initiated a process that, if SnapPower took no action, would result in Snap-Power's listings being removed from Amazon.com, necessarily affecting sales activities in Utah. LDG has not articulated a compelling argument why it would be unfair or unreasonable for it to be subject to specific personal jurisdiction in Utah under these circumstances.

## CONCLUSION

We have considered LDG's other arguments and find them unpersuasive. Because LDG's actions satisfy the three-factor test for specific personal jurisdiction, we reverse and remand for further proceedings.

## **REVERSED AND REMANDED**

## COSTS

No costs.